**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **3:13-CV-338** |
| | : | **(JUDGE MARIANI)** |
| **EMMANUEL HIPOLITO, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION**

## I. INTRODUCTION

On February 8, 2013, Plaintiff United States of America initiated this action, pursuant to 26 U.S.C. §§ 7401, 7403, to foreclose its tax liens against certain real property located in Clarks Summit, Pennsylvania owned by Defendants Emmanuel and Jesusa Hipolito as tenants by the entirety. (*See* Compl., Doc. 1, at ¶¶ 1, 17). The United States seeks to sell the Hipolitos' property in partial satisfaction of Mr. Hipolito's tax liabilities. (*Id.* at ¶ 1). Presently before the Court is Plaintiff's Motion for Summary Judgment. (Doc. 19). For the reasons set forth below, the Government's Motion will be denied.

## II. FACTUAL BACKGROUND

### A. Statement of Undisputed Facts

On March 29, 1983, Emmanuel and Jesusa Hipolito acquired real property located at 109 Miller Road in Clarks Summit, Pennsylvania (the "Property") as tenants by the entirety. (Pl.'s Statement of Facts ("PSOF"), Doc. 20-15, at ¶ 6; Deed, Doc. 20-14). In the years of

2002, 2003, 2006, 2007, and 2008, Mr. Hipolito failed to fulfill his federal tax obligations. (PSOF at ¶¶ 1-5). As a result, the Government filed notices of federal tax liens with the Lackawanna County Prothonotary. (*Id.* at ¶¶ 7-10). On June 7, 2013, the United States attained a default judgment against Mr. Hipolito in the Western District of Pennsylvania, *United States v. Emmanuel F. Hipolito*, 1:12-cv-00303-SJM, for "the sum of $231,568.39, as of April 30, 2013, plus statutory additions to tax until paid, for unpaid federal income taxes for the tax years 2002, 2003, 2006, 2007 and 2008." (Doc. 31-4).

**B. Jesusa Hipolito's Verified Statement**

In response to the Government's Motion for Summary Judgment, Mrs. Hipolito filed a Verified Statement. (J. Hipolito V.S., Doc. 23).[1] In her Statement, Mrs. Hipolito states that she currently resides on the Property, which "is [her] only home." (*Id.* at ¶¶ 3, 5). Mrs. Hipolito has lived on the Property since 1983. (*Id.* at ¶ 5). Although Mr. Hipolito lived with Mrs. Hipolito until 1998, he no longer resides on the Property. (*Id* at ¶¶ 4, 7-8). Since June 1998, the Hipolitos' marriage has been estranged. (*Id.* at ¶ 8). Since their separation, Mr. Hipolito has been living in Western Pennsylvania. (*Id.* ¶ 16).

Mrs. Hipolito maintains that she and her husband have filed separate tax returns since 1998. (*Id.* at ¶ 9). She states that she had no notice of her husband's tax debt, nor any knowledge that his debts could jeopardize her possession of the Property. (*Id.* at ¶¶ 10-12,

[1] As detailed below, the Government argues in its Reply Brief that the "Court should disregard [Mrs. Hipolito's] verified statement under Fed. R. Civ. P. 37(C)(1), as this information was sought in discovery and the defendant failed to disclose this information at that time." (Doc. 31 at 2).

20). According to Mrs. Hipolito, she was never a party to any proceeding or correspondence regarding her husband's tax problems, and the Government never provided her any notice of his tax debt. (*Id.* at ¶¶ 10-12). She also states that she had believed that the Property would not be subject to a forced sale since it was marital property, and, therefore, beyond the reach of creditors under Pennsylvania law. (*Id.* at ¶ 20).

Mrs. Hipolito further avers that the forced sale of the Property would create financial hardship for her, while it would have relatively little impact upon her husband. (*Id.* at ¶¶ 13-15, 19). She states that she possesses limited assets and has a minimal monthly income. (*Id.* at ¶ 13). As a result, Mrs. Hipolito alleges, "I cannot afford to buy a home other than the property. It will be difficult for me to pay rent somewhere and maintain my current, modest lifestyle." (*Id.* at ¶ 15). She states that she is an unemployed senior citizen with continuing health issues. (*Id.* at ¶¶ 13-14, 19). According to Mrs. Hipolito,

> In light of my poor health and age, any forced sale of my home in this case would hurt me far more than it would hurt my husband who owes the taxes in this case; in fact, the forced sale of my home would not hurt my husband at all: It would only hurt me.

(*Id.* at ¶ 19).

Mrs. Hipolito speculates that Mr. Hipolito may have other assets, aside from the Property, and a greater income than she has. (*Id.* at ¶ 17).[2] She states that she intends to subpoena her husband and his financial records. (*Id.*). She asks the Court to stay this

[2] Counsel for the Government avers that the Internal Revenue Service informed her that it is unaware of any other real property owned by Mr. Hipolito. (Saiz Decl., Doc. 31-1, at ¶ 5).

matter until the Government can complete its investigation of Mr. Hipolito's assets. (*Id.* at ¶ 18).

## III. Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Turner v. Schering-Plough Corp.,* 901 F.2d 335, 340 (3d Cir.1990). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,*

974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

## IV. Analysis

As an initial matter, the Government argues that the Court should disregard Mrs. Hipolito's Verified Statement, pursuant to Fed. R. Civ. P. 37(c)(1), since it sent Mrs. Hipolito interrogatories and requests for documents that would have disclosed the information contained in her Statement. (Reply Br., Doc. 31, at 2). Rule 37 of the Federal Rules of Civil Procedure governs discovery sanctions. Rule 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The 1999 Advisory Committee Notes to subdivision (c) state that this section is an "automatic," "self-executing sanction" intended to provide "a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56." In contrast, Rule 37(d), which governs, *inter alia*, sanctions for a party's failure to serve answers to interrogatories, requires the party seeking sanction to certify "that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Fed. R. Civ. P. 37(d)(1)(B).

Here, Mrs. Hipolito made initial disclosures pursuant to Rule 26(a). (Doc. 32-1). As a result, sanctions pursuant to Fed. R. Civ. P. 37(c)(1) are inappropriate. Instead, because the

Government's argument is rooted in an alleged failure to respond to interrogatories, Rule 37(d) governs. The Government has not certified that it "in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." *See* Fed. R. Civ. P. 37(d)(1)(B). Accordingly, the Court cannot exclude Mrs. Hipolito's Verified Statement pursuant to Rule 37.

Next, the Court turns to whether it would be appropriate to order a forced sale of the Property. While Mrs. Hipolito concedes that the Government has a judgment against Mr. Hipolito for his unpaid taxes and that he has an interest in the Property (J. Hipolito V.S. at ¶¶ 2, 9, 18), she asserts that the Court should exercise its equitable discretion, as set forth in *United States v. Rodgers*, 461 U.S. 677, 103 S. Ct. 2132, 76 L. Ed. 2d 236 (1983), to refrain from ordering a forced sale. (Br. in Opp., Doc. 25, at 14).

*Rodgers* held that district courts possess limited discretion to refuse to order a forced sale. 461 U.S. at 706-709. The Court in *United States v. Craft*, however, made clear "that federal tax liens may attach to property that cannot be unilaterally alienated." *United States v. Craft*, 535 U.S. 274, 284, 122 S. Ct. 1414, 1423, 152 L. Ed. 2d 437 (2002). In *Craft*, the Supreme Court held that entireties property may be subject to a federal tax lien against one spouse. *Id.* at 276. "The failure to pay federal taxes after demand empowers the government to place a lien in favor of the United States 'upon all property and rights to property, whether real or personal, belonging to such person.'" *United States v. Winsper*, 680 F.3d 482, 488 (6th Cir. 2012) (quoting 26 U.S.C. § 6321); *see Rodgers*, 461 U.S. at

681-82. "The lien arises at the time the assessment is made and continues until the liability has been satisfied or the statute of limitations bars enforcement of the lien." *United States v. Cardaci*, 2013 WL 5816823, at *4 (D.N.J. 2013) ("*Cardaci I*") (citing 26 U.S.C. § 6322).

"Whether a taxpayer has a property interest that constitutes 'property and rights to property' within the meaning of § 6321 is a question of federal law, but one which 'largely depends on state law,' and, accordingly, courts 'look initially to state law to determine what rights the taxpayer has in the property.'" *Id.* (quoting *Craft*, 535 U.S. at 278). "What consequences attach to that right are a matter of federal law." *Popky v. United States*, 326 F. Supp. 2d 594, 598 (E.D. Pa. 2004) *aff'd*, 419 F.3d 242 (3d Cir. 2005).[3] "Although under Pennsylvania law, a creditor against one spouse only cannot attach a lien to property held by both spouses in a tenancy by the entireties, *see, United States v. Parcel of Real Property Known as 1500 Lincoln Avenue*, 949 F.2d 73, 75 (3d Cir. 1991), this prohibition does not apply where federal tax liens are concerned." *Id.* (citing *Drye v. United States*, 528 U.S. 49, 120 S. Ct. 474, 145 L. Ed. 2d 466 (1999)).

Federal tax law authorizes the Government to enforce a lien "or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest,

---

[3] The Supreme Court explained the relationship between federal and state law in this area using the following analogy:

> A common idiom describes property as a "bundle of sticks"—a collection of individual rights which, in certain combinations, constitute property. State law determines only which sticks are in a person's bundle. Whether those sticks qualify as "property" for purposes of the federal tax lien statute is a question of federal law.

*Craft*, 535 U.S. at 278-79 (internal citations omitted).

to the payment of such tax or liability." 26 U.S.C. § 7403(a). A district court "*shall* . . . finally determine the merits of all claims to and liens upon the property, and . . . *may* decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." *Id.* at § 7403(c) (emphasis added). In *Rodgers*, the Supreme Court held that § 7403 "empowers a federal district court to order the sale of a family home in which a delinquent taxpayer had an interest at the time he incurred his indebtedness, [even if] the taxpayer's spouse, who does not owe any of that indebtedness, also has a separate" interest in the property. 461 U.S. at 680. At the same time, *Rodgers* found that the use of the word "may" in the statute either conferred or confirmed that district courts have "at least a limited degree of judicial discretion" to refrain from ordering a forced sale where an innocent third-party spouse has an interest in the property. *Id.* at 706-09. "This discretion under § 7403 is 'not . . . unbridled' and 'should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes.'" *United States v. Cardaci*, 2014 WL 7524981, at *7 (D.N.J. 2014) ("*Cardaci II*") (collecting cases) (quoting *Rodgers*, 461 U.S. at 709, 711).

*Rodgers* set forth a non-exhaustive list of factors for district courts to consider when weighing the equities of a forced sale. 461 U.S. at 710-11. The Court stated,

> First, a court should consider the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes. . . .

> Second, a court should consider whether the third party with a non-liable separate interest in the property would, in the normal course of events (leaving aside § 7403 and eminent domain proceedings, of course), have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors. . . .
>
> Third, a court should consider the likely prejudice to the third party, both in personal dislocation costs and . . . practical undercompensation. . . .
>
> Fourth, a court should consider the relative character and value of the non-liable and liable interests held in the property[.]

*Id.*

The *Rodgers* Court emphasized that the factors it outlined should not "be used as a 'mechanical checklist' to the exclusion of common sense and consideration of special circumstances." *Id.* at 711. Subsequent courts "have applied the equitable factors set forth in *Rodgers* when contemplating the denial of a forced sale of a marital residence owned as a tenancy by the entirety." *Cardaci II*, 2014 WL 7524981, at *8 (collecting cases).

Here, Mrs. Hipolito offers enough evidence, in accordance with *Rodgers*, to create genuine issues of material fact as to whether the Court should order a forced sale. Therefore, summary judgment is inappropriate at this stage in the litigation. The record, as it currently stands, is incomplete and precludes a thorough *Rodgers* analysis. Accordingly, the Court will deny the Government's Motion for Summary Judgment and schedule a trial in accordance with the *Rodgers* factors and the issues of fact identified below.

**A. Prejudice to Government**

The degree of prejudice the Government would suffer if the Court were to refuse to order an immediate sale of the entire Property is unclear. The record contains several issues of fact and factual gaps regarding the first *Rodgers* factor, including: (1) the market value of the Property, (2) the imputed rental value of the Property, (3) Mr. Hipolito's income, and (4) Mr. Hipolito's other assets, aside from the Property. The parties should be prepared to produce evidence on these issues for the Court to determine whether (1) "the value of the delinquent taxpayer's partial interest is likely to be equal to or greater than its value as a fraction of the total value of the entire property," (2) "the proceeds of a partial sale could be expected to fully satisfy the indebtedness," and (3) "the indebtedness could be satisfied out of other property owned solely by the delinquent taxpayer[.]" *Winsper*, 680 F.3d at 489-90 (quoting *Rodgers*, 461 U.S. at 710 & n.40). Under any of these circumstances, the Court has stated that a partial sale "would not prejudice [the Government] at all" and there "would be no reason at all to authorize a sale of the entire property." *Rodgers*, 461 U.S. at 710 & n.40. Moreover, "[t]he prejudice to the Government of forgoing an immediate sale of the entire property might also be considered fairly minimal if the third-party interest at stake could be expected to lapse in the relatively near future." *Id.* at 710 n.41.

The Supreme Court has stated that "even when the partial interest would be worth less sold separately than sold as part of the entire property, the possibility of prejudice to the Government can still be measured as a matter of degree." *Id.* at 710. "Simply put, the higher

the expected market price, the less the prejudice, and the less weighty the Government's interest in going ahead with a sale of the entire property." *Id.* In applying the first *Rodgers* factor, subsequent courts have rnitigated the degree of prejudice to the Government by ordering the non-delinquent spouse to pay one-half of the imputed rental value of the property, rather than ordering an immediate forced sale. *See United States v. Jones*, 877 F. Supp. 907, 920 (D.N.J. 1995) *aff'd*, 74 F.3d 1228 (3d Cir. 1995) (ordering the non-liable spouse to pay to the Government, as the cotenant out of possession, one-half the imputed rental value of the property); *Cardaci II*, 2014 WL 7524981, at *18 (ordering the defendants to pay one-half of the imputed rental value of the real property each month until the judgment is satisfied); *United States v. Tanchak*, 2009 WL 348270, at *7 (D.N.J. 2009) (same) *aff'd*, 351 F. App'x 729 (3d Cir. 2009).

**B. Third Party Expectations**

The second *Rodgers* factor asks "whether the third party with a non-liable separate interest in the property would, in the normal course of events (leaving aside § 7403 and eminent domain proceedings, of course), have a legally recognized expectation that the separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors." *Rodgers*, 461 U.S. at 710-11. If no such expectation exists, then "there would seem to be little reason not to authorize the sale." *Id.* at 711. According to the Court, "this factor is amenable to considerations of degree." *Id.*

"In Pennsylvania, a tenancy by the entireties is a form of co-ownership of real or personal property by husband and wife." *In re Brannon*, 476 F.3d 170, 173 (3d Cir. 2007). Its "essential characteristic is that 'each spouse is seised per tout et non per my, i.e., of the whole or the entirety and not of a share, moiety or divisible part.'" *Id.* (quoting *In re Gallagher's Estate*, 352 Pa. 476, 43 A.2d 132, 133 (1945)). "When one spouse dies, the surviving spouse takes no new estate; rather, the only change is in the properties of the legal entity holding the estate." *Johnson v. Johnson*, 908 A.2d 290, 295 (Pa. Super. Ct. 2006). "For the duration of the entireties estate, either spouse has the presumptive power to act for both, so long as both spouses share the proceeds, and neither spouse may appropriate property for his or her own use, to the exclusion of the other spouse, without the consent of the other spouse." *Id.* "The only established ways in which it may be severed, other than by the death of one of the spouses, are 'a joint conveyance of the estate, divorce, or mutual agreement, either express or implied.'" *In re Brannon*, 476 F.3d at 173-74 (quoting *Clingerman v. Sadowski*, 513 Pa. 179, 519 A.2d 378, 381 (1986)).

"Entireties property may not be accessed by the creditors of only one spouse." *Id.* at 173; *see also Johnson*, 908 A.2d at 295 ("Entireties property is unavailable to satisfy the claims of the creditor of one of the tenants.") (citing *Patwardhan v. Brabant*, 439 A. 2d 784 (Pa. Super. Ct. 1982)).

> As the Pennsylvania Supreme Court explained in *Madden v. Gosztonyi Savings & Trust Co.*, 331 Pa. 476, 200 A. 624 [, 627-28] (1938), with respect to property owned by the entireties, neither spouse "has any individual portion

> which can be alienated or separated, or which can be reached by the creditors of either spouse."

*In re Brannon*, 476 F.3d at 173.

Here, the second factor weighs heavily in favor of Mrs. Hipolito and against a forced sale. As a tenant by the entirety, Mrs. Hipolito could have reasonably expected that the Property would be protected under Pennsylvania law from her husband's creditors. *See In re Brannon*, 476 F.3d at 173-74 (noting that under Pennsylvania law the only ways a tenancy by the entirety "may be severed, other than by the death of one of the spouses, are 'a joint conveyance of the estate, divorce, or mutual agreement, either express or implied'"); *Cardaci I*, 2013 WL 5816823, at *8 (stating "the fact that Mrs. Cardaci's interest arises from a tenancy by the entirety under New Jersey law, which strongly protects her right to possession and the right of survivorship, weighs strongly in her favor").

**C. Prejudice to Third Party**

The third *Rodgers* "factor envisions some special circumstances of prejudice to the non-liable third party." *Winsper*, 680 F.3d at 492 (quoting *United States v. Bierbrauer*, 936 F.2d 373, 376 (8th Cir. 1991)); *see also Cardaci II*, 2014 WL 7524981, at *10. The "inherent indignity and inequity of being removed from one's home" cannot "automatically tip the scales in [the innocent spouse's] favor." *Bierbrauer*, 936 F.2d at 375.

> If this were so, the government could never foreclose against a jointly owned residence—a result clearly untenable under § 7403. Rather, we think this third factor envisions some special circumstance of prejudice to the non-liable third party. Such a special circumstance might be the potential for undercompensation for the property interest.

*Id.* at 375-76 (quoting *Rodgers*, 461 U.S. at 711).

Here, the Court, on summary judgment, cannot determine the prejudice, if any, Mrs. Hipolito would suffer if the Court were to order the sale of the Property at this time. Mrs. Hipolito avers, "I cannot afford to buy a home other than the property. It will be difficult for me to pay rent somewhere and maintain my current, modest lifestyle." (J. Hipolito V.S. at ¶ 15). However, there is no evidence of record that would support an estimate of Mrs. Hipolito's expected dislocation costs. Further, the fact that the record does not include the Hipolitos' projected life expectancies precludes the Court from evaluating Mrs. Hipolito's risk of undercompensation ensuing from her loss of her right of survivorship under Pennsylvania law and the possibility that the title to the Property may pass to her by operation of law as the survivor of the tenancy by the entireties. *See Cardaci I*, 2013 WL 5816823, at *9.

**D. Value of Liable vs. Non-Liable Interests**

Regarding the fourth factor, the Supreme Court has stated that courts "should consider the relative character and value of the non-liable and liable interests held in the property[.]" *Rodgers*, 461 U.S. at 711.

> [I]f, for example, in the case of real property, the third party has no present possessory interest or fee interest in the property, there may be little reason not to allow the sale; if, on the other hand, the third party not only has a possessory interest or fee interest, but that interest is worth 99% of the value of the property, then there might well be virtually no reason to allow the sale to proceed.

*Id.*

In determining the relative interests in a tenancy by the entirety, one court in this Circuit has considered the life expectancies of the spouses to determine the likelihood that one spouse may take the property in fee simple. *Cardaci I*, 2013 WL 5816823, at *9; *Cardaci II*, 2014 WL 7524981, at *12. *Cardaci II* also took into consideration the values of the spouses' life estates. 2014 WL 7524981, at *12.

The Court cannot evaluate the value of the Hipolitos' relative interests in the Property because the record is incomplete. In *Cardaci I*, the court observed,

> As for the relative character and value of interests in the property, the record does not discuss the relative life expectancies of Mr. and Mrs. Cardaci, which could affect the likelihood of one spouse taking the property in fee simple. This factor could be neutral, if each spouse has an equal interest in the property, or could weigh for or against a forced sale, if the life expectancy of one spouse is significantly greater than the other's.

2013 WL 5816823, at *9.

Likewise, in the absence of evidence discussing the Hipolitos' life expectancies, the Court is unable to determine whether Mrs. Hipolito's interest in the Property is equal to that of her husband's or whether the value of her interest weighs against a forced sale. Thus, an issue of material fact exists as to "the relative character and value of the non-liable and liable interests held in the property." *See Rodgers*, 461 U.S. at 711.

**E. Other Issues of Material Fact in Dispute**

Finally, the Supreme Court stated that the factors set forth in *Rodgers* do not encompass an exhaustive list of relevant considerations. 461 at U.S. at 711. The Court cautioned against using the *Rodgers* factors as "a 'mechanical checklist' to the exclusion of common sense and consideration of special circumstances." *Id.* In this case, there are other issues of fact, beyond those already identified herein, that are material in resolving whether the Court should refrain from ordering a forced sale. Such issues include: (1) whether Mrs. Hipolito alone would be disadvantaged by a forced sale, (2) whether the Property is encumbered by a mortgage or other liens, (3) whether Mrs. Hipolito had notice of her husband's tax debt, (4) why the Hipolitos remain married despite being estranged for many years, (5) whether the Hipolitos intend to divorce in the foreseeable future, (6) the value of Mrs. Hipolito's other assets, (7) the value of Mrs. Hipolito's income, and (8) Mrs. Hipolito's prospects for future employment.

This case presents to the Court in a posture similar to *Cardaci I*. The *Cardaci I* Court faced cross-motions for summary judgment in a tax foreclosure action in which the wife of a delinquent taxpayer sought to prevent a forced sale of the marital residence by invoking the equitable considerations recognized in *Rodgers*. 2013 WL 5816823, at *1, as grounds for avoiding a forced sale. In *Cardaci I*, the court found that the second *Rodgers* factor, the expectations of the non-delinquent spouse, weighed "strongly against a forced sale" but that

the other factors were inconclusive given the gaps in the summary judgment record. *Id.* at *8-9. As a result, the *Cardaci I* Court concluded,

> The evidence currently in the record, along with all reasonable inferences drawn in favor of Defendants as the parties opposing summary judgment, is enough to convince the Court that the equities of this case may favor Defendants and militate against a forced sale. However, Defendants contend, and the Court agrees, that it is premature to decide this matter because the record is incomplete. In fairness to both the government and Defendants, the Court will deny in part without prejudice both the government's motion for summary judgment and Defendants' cross-motion, and hold a final hearing to address this remaining issue.

*Id.* at *9.

Thereafter, the Court in *Cardaci II* conducted a bench trial after which it exercised its discretion to deny a forced sale of the Cardaci property but granted the Government's alternative relief in lieu of foreclosure and ordered the Defendants to pay one-half of the imputed rental value of the Cardaci home in the amount of $750 payable every month until the judgment against the liable spouse, Gary Cardaci, is satisfied.

The analysis of *Cardaci I* is applicable here. Mrs. Hipolito has proffered enough evidence "to convince the Court that the equities of this case may favor Defendants and militate against a forced sale." *See id.* The Court will, therefore, deny the Government's Motion for Summary Judgment and schedule a date for trial to determine whether the Court should exercise its discretion under *Rodgers* to refrain from ordering a forced sale.

## CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's Motion for Summary Judgment (Doc. 19). A separate Order follows.

Robert D. Mariani
United States District Judge